## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

**CARLOS M. LOPEZ BURGOS,**
Plaintiffs,

**v.**                                        **CIVIL NO. 03-1765 (DRD)**

**UNITED STATES OF AMERICA,**
**EMITALIA OLIVERI, et als.,**
**et al.,**
Defendants

## OPINION AND ORDER

The instant case is a civil action brought forth by Mr. Carlos M. Lopez Burgos ("plaintiff") pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(1), 1402(b), and 1267 through 2680 ("FTCA").  In sum, plaintiff is seeking several remedies, to wit: 1) damages in the amount of not less than $2,000,000.00 for the suffering and mental anguish, and 2) costs and reasonable attorney's fees, as well as any other remedy, legal or equitable, the Court might deem just.

Now, pending before the Court is the United States of America's ("USA") *Motion for Summary Judgment*.  (Docket No. 43).  Plaintiff duly opposed said request.  (Docket No. 46).  As, pursuant to the parties own admissions, there are no issues of material fact to be determined, thus, entitling parties to judgment as a matter of law, the Court proceeds to tend to the matter at hand: whether the challenged conduct of the personnel at the Army and Air Force Exchange Service ("AAFES") operating gas station in Ft. Buchanan and not adopting a local fire regulation falls within the *discretionary function exception* provided for in the FTCA, thus, depriving this Court of subject matter jurisdiction.

## I.  SUMMARY JUDGMENT STANDARD

The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment

when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *See* Celotex Corp v. Catrett, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54 (1986); Abbadessa v. Moore Business Forms, Inc., 987 F.2d 18, 22 (1st Cir. 1993).

At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor. Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." Cadle Company v. Hayes, 116 F.3d 957 at 959-60 (1st Cir. 1997). In other words, the court must construe the record and all reasonable inferences from it in favor of the non-movant (the party opposing the summary judgment motion). *See* Suarez v. Pueblo Int'l, Inc. 229 F.3d 49, 53 (1st Cir. 2000); Cortes-Irizarry, 111 F. 3d at 187; *see also* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Since there are no issues of material facts, the Court now proceeds to establish the factual scenario.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 4, 2001, plaintiff, an independent gasoline cistern truck driver, was in the process of connecting his gasoline truck's hose to the principal underground gasoline reservoir for the AAFES gas station at Ft. Buchanan, Guaynabo, P.R. Parallel to Mr. Lopez's gas connection proceedings at the gasoline station, co-defendant Ms. Emitalia Olivieri Sanchez ("Olivieri") was leaving gas pump #5. At that point in time, Olivieri was driving her Volvo. Then, pursuant to the *Amendment to Complaint*, Docket No. 21, Olivieri's Volvo, "suddenly and inexplicably,

accelerated[,] lost control, rammed Mr. Lopez and continued [forward] until [the] Volvo was incrusted under the gas-laden cistern." Id. at 1, ¶1. Gasoline spilled on and around plaintiff. Plaintiff then attempted to rise, but was unable due to injuries suffered as a result of the impact. Plaintiff was then taken by ambulance to Hospital Industrial where he received medical treatment – he suffered trauma to the head, back, left foot, knee, and hip. Ultimately, Mr. Lopez was discharged by the State Insurance Fund on November 12, 2002 while determining a 15% FFG incapacity in his lumbar area. In sum, plaintiff claims damages against the United States for allowing consumer automobiles to refuel and/or engines to run and/or automobile movement during the refueling of the gasoline reservoirs anchored on local state regulations.

Prior to filing this action, on January 2, 2003, plaintiff filed a claim with the U.S. Army Claims Service. Subsequently, on March 11, 2003, plaintiff met with the U.S. Army JAG representative for Clams to discuss the matter at hand. Finally, on May 22, 2003, the U.S. Army Claims Services notified plaintiff that his claim had been denied. Hence, plaintiff proceeded to timely file the instant claim on July 14, 2003 as provided by 28 U.S.C. § 2401(b).[1]

### III. ANALYSIS
*Discretionary Function Exception:*

The Court now examines the applicable statutory provisions, "taking the record in the light most hospitable" to plaintiffs, and "indulging all reasonable inferences in [their] favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

---

[1] **§ 2401. Time for commencing action against United States**
   **(b)** A tort claim against the Untied States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, 2671-2680, was approved by Congress as an affirmative act of waiving the sovereign immunity of the United States to suits in tort.  In the exercise of this power, Congress clearly delineated the conditions under which the United States could be sued.  Santiago Ramírez v. Secretary of Dept. of Defense, 984 F.2d 16, 18 (1ˢᵗ Cir. 1993);  Del Valle Rivera v. United States, 626 F.Supp. 347 (D.P.R. 1986).   Specifically, the FTCA authorizes suits for damages caused by the negligent acts or omissions of its agents or employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b).  This express waiver, however, has been limited for the FTCA itself particularly excludes "claim[s] [...] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  Id. at §2680(a); *see also* Wood v. United States, 290 F.3d 29 (1ˢᵗ Cir. 2002); Montijo Reyes v. United States, 349 F.Supp.2d 234 (D.P.R. 2004), *aff'd*, No. 05-1353, 2006 U.S. App. LEXIS 1667 (1ˢᵗ Cir. Jan. 24, 2006).  Thus, if the Court were to find this *discretionary function exception* applicable, the Court would then lack subject matter jurisdiction to entertain the claims asserted.  Id.

In order to ascertain whether or not said discretion is apposite, the Supreme Court has established a two tiered test: 1) if the element of choice (discretion) exists; and 2) if this *discretion* warrants public policy scrutiny.  In other words, the Court must first determine it the particular conduct at issue involves an element of judgment or choice on the part of the acting party.  If discretion is, in fact, present, the Court must then decide whether or not the discretion being controverted entails public policy considerations.  *See* Untied States v. Gaubert, 499 U.S. 315, 322-

23, 111 S.Ct. 1267 (1991); Berkovitz v. United States, 486 U.S. 531, 536-37, 108 S.Ct. 1954 (1988);

Muniz Rivera v. United States, 326 F.3d 8, 15 (1st Cir. 2003); Shansky v. United States, 164 F.3d

688, 691 (1st Cir. 1999); Montijo Reyes, 349 F.Supp.2d at 238.  If, in the end, there is no room for

judgment, then the exception is inapplicable and the Court must turn to law of the place where the

act or omission occurred.  See Wood, 290 F.3d at 36; Magee v. United States, 121 F.3d 1, 4 (1st Cir.

1997).  As simply stated by the Supreme Court:

> [t]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.  In this event, the employee has no rightful option but to adhere to the directive.  And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect.

Berkovitz, 486 U.S. at 536.

As such, if a court reaches the conclusion that the actions carried forth by the government

are discretionary, their having been negligent is of absolutely no consequence for purposes of the

statute.  See Magee, 121 F.3d at 5 n.2; Montijo Reyes, 349 F.Supp.2d at 239; Attallah v. United

States, 955 F.2d 776, 784 n.13 (1st Cir. 1992).[2]

The essence of plaintiff's argument is that Ft. Buchanan's fire department considers

underground reservoir refueling operations a potentially dangerous activity requiring special

precautions (i.e. no autos authorized in the area of the station during the reservoir refueling).

Plaintiff further argues that, pursuant to USA's admission in its answer to a request for admissions

– which was never provided as an exhibit to plaintiff's opposition – the Army and Air Force

Exchange Service personnel had been warned regarding said danger by Ft. Buchanan's fire

---

[2] "Once governmental action shave been labeled discretionary, it is immaterial whether those actions have been negligently performed for purposes of determining the applicability of the exception in Section 2680(a)." Montijo Reyes, 349 F.Supp.2d at 239 (citations omitted).

department.  As such, it is plaintiff's contention, the discretionary function is inapplicable to the case at bar because the Department of the Army's decision not to adopt the Puerto Rico Fire Prevention Code ("PRFPC") (requiring no consumer autos present or movement thereof during reservoir refueling) is neither grounded on the "Army's mission to provide a defense to the nation or to enforce its diplomatic efforts" nor on "social, economic, and political policy".[3]  That is to say, pursuant to plaintiff's arguments, the AAFES's decision not to refrain from selling gasoline and/or to prohibit vehicles moving in the vicinity of the unloading zone as required by section 1400.36 of the PRFPC – also not provided by plaintiffs as an exhibit to their opposition[4] – cannot fall within the *discretionary exception rule* after having been warned by Ft. Buchanan's fire department about the dangers said omissions entailed.

The USA, on the other hand, purports that it had no obligation to either enforce the PRFPC in an exclusively federal jurisdiction enclave[5] or adopt it as part of the Army's or Ft. Buchanan's regulation provided that Congress, as the specific body in charge of organizing and regulating the Army of the United States, equipped the Department of the Army with the specific discretion to regulate fire prevention and protection at their installations.  The U.S. Army Commander, in turn, created *U.S. Army South Reg. 420-90-1*, 01 October 1999, to that effect.  *U.S. Army South Reg. 420-*

---

[3]  The Army, however, as part of its services to the armed forces personnel and civilian authorized personnel, may operate a gasoline station as part of the services to be provided to its personnel, similar to a Port Exchange Store, in order to supply gasoline to said armed forces and/or authorized civilians.

[4]  Plaintiff's arguments in opposition to the brevis disposition motion failed to comply with the Court's anti-ferreting rule.  *See generally* Velez v.  Puerto Rico Electric Power Authority, 170 F. Supp. 2d 158, 162 1st (1st Cir.2001), and Stepanischen v. Merchants Despatch Trans., 722 F. 2d 922, 927 (1st Cir.1983).  That is to say, plaintiff's basis for his argument was not provided to the Court in compliance with Fed.R.Civ.P. 56, nor Local Rule 56.

[5]  *See* People of Puerto Rico v. Gerald Thomas Koedel, 927 F.2d 662, 664 (1st Cir. 1991) (holding that the federal government possesses exclusive jurisdiction over the lands on which Fort Buchanan now lies).

*90-1* at Chapter 3, Section 6 further adopts the *National Fire Protection Association*'s ("NFPA") Uniform Fire Code and Flammable and Combustible Liquids Code.  None of these Codes, emphatically asserts the USA, contains any similar requirement to the one found in PRFC, section 1400.36 which requires that, "[w]hile a tanker truck unloads flammable liquid to an underground reservoir, it is prohibited the selling of such liquid on the pump island and that any vehicle maintains its engine running or moving in the vicinity of the unloading zone."  Thus, there is no proximate causation as to the USA.

       As has the First Circuit discussed in detail, the United States holds exclusive jurisdiction over Ft. Buchanan provided that it is a public land conveyed to the federal government by the Governor of Puerto Rico, and accepted by the Secretary of War, on August 10, 1945.  *See* Spanish American Peace Treaty Proclamation ("Treaty of Paris"), 30 Stat. 1755; Foraker Act, 31 Stat. 77; Porto Puerto Rico Lands ("Act of 1902"), 32 Stat. 731; Revised Statutes and Codes of Porto Rico, §§ 1670-1677 ("Act of 1903"); Jones Act ("Porto Rican Federal Relations Act"), 39 Stat. 951; Puerto Rico Act Number 33 of June 27, 1925; 40 U.S.C § 255; P.R. Laws Ann. tit. 28 § 46 (all consecutively providing the history of the origins of Ft. Buchanan as public land conveyed to the federal government by the Governor of Puerto Rico in 1945); *see also* People v. Koedel, 927 F.2d 662 (1st Cir. 1991).  Consequently, by its very nature as a federal enclave, it is only the Congress of the United States who may legislate regarding Ft. Buchanan.

       To that effect, Congress enacted Section 3013(c)(2), and (g) of the United States Code which authorizes the Secretary of the Army, of course as a subordinate of and with the approval of the Secretary of Defense, to formulate policies and programs for the Department of the Army consistent with national security objectives, as well as establish regulations to carry out his or her functions,

powers, and/or duties.  It is under this authority that the Secretary of the Army adopted the U.S. Army South Reg. 420-90-1 of October 1ˢᵗ, 1999 ("ASR").  Through the ASR, the U.S. Army Commander is made responsible to establish fire regulations within Army enclaves (i.e. Ft. Buchanan).  The ASR, in particular, specifies that "[a]ll flammable and combustible liquid storage will be in complyance [sic] with the requirements of NFPA, NFC-30 (Flammable & Combustible Liquids Code)."  Id. at 10, ¶ 3-6a.  It further considers gasoline as part of those flammable liquids. Id.  In particular, Chapter 9 of the NFPA 30A, Code for Motor Fuel Dispensing Facilities and Repair Garages of 2000, regulates tank filling.  Aside from requiring a specific separation between the delivery vehicle and the tank to be filled, there is nothing in this chapter, or any of the other chapters, requiring that, as is plaintiff's contention, the selling of flammable liquid, or running of engines, or moving vehicles during the unloading of gasoline into the gasoline tanks is prohibited. NFPA 30A references NFPA 385, Standard for Tank Vehicles for Flammable and Combustible Liquids of 2000.  NFPA 385, in turn, remains silent as to tank filling procedures at dispensing facilities and/or repair garages.  Furthermore, NFPA 30, Flammable and Combustible Liquids Code of 2000, also does not hold a provision comparable to the one found in the PRFPC which plaintiff insists the Court should apply even when neither the Department of the Army or the NFPA have adopted said statute.  Finally, NFPA 1, Uniform Fire Code of 2000, like the ASR, the NFPA 30A, the NFPA 385, and the NFPA 30, does not oblige service stations to impose an absolute prohibition against consumer and/or other running engines and moving vehicles at the time of refueling the gasoline tanks.

It is unquestionable that it was left to the Army to choose which fire codes would be applicable at their installations and that these would be those construed by the National Fire

Protection Association.  In the same manner, the Court harbors no doubt that, by the Army not adopting any state regulation, it necessarily implied that said excluded articulate is inapplicable. Hence, it cannot be contested that the Army, by deciding which fire codes were to be applied at its enclaves, was granted the discretionary function covered under the FTCA.  In sum, the Court deems that the Army was, in fact, provided with the authority to exercise policy judgment when allowed to regulate itself, thus, falling within the discretionary function exception.  As such, then, the necessary causal connection between the Army's failure to comply with the PRFPC and the damages suffered by plaintiff is non-existent.  There is no other fault and/or negligence of the Army alleged other than a "violation" of the PRFPC regulation for refueling gas stations – certainly, a cause of action that cannot be sustained under the discretionary function of the FTCA.  Hence, there is no viable negligence suit under the applicable Puerto Rico doctrine or the FTCA because the element of choice exists in determining the applicability of a particular safety regulation applicable at a federal enclave gasoline station.

## IV.  CONCLUSION

Based on the foregoing, defendant's *Motion for Summary Judgment* (Docket No. 46) is **GRANTED**, and plaintiff's claims pursuant to the FTCA are hereby **DISMISSED WITH PREJUDICE**.  The Third-Party Complaint of the United States against Emitalia Olivieri is now **MOOT** and plaintiff's Amended Complaint to include Emitalia Olivieri as co-defendant is **DISMISSED WITHOUT PREJUDICE** as a supplemental claim pursuant to 28 U.S.C. § 1367(a)[6] pursuant to González de Blasini v. Family Department, 377 F.3d 81, 89 (1st Cir. 2004); Claudio

---

[6]  There is no diversity between plaintiff – the truck driver, victim of the impact – and Olivieri – the driver of the Volvo auto that impacted plaintiff.  The case may proceed in state court as a casualty automobile collision case.  The Court hints no suggestions as to final outcome.

Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 105 (1st Cir. 2004); and Rodríguez v. Doral

Mortgage, 57 F.3d 1168, 1177 (1st Cir, 1995).  Judgment will be issued accordingly.

   **IT IS SO ORDERED.**

   In San Juan, Puerto Rico, this 10th day of March of 2006.

s/ Daniel R. Dominguez
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**
